USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/5/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FIZZ SOCIAL CORP., | |
| Plaintiff, | 23-CV-8840 (LAK) (BCM) |
| -against- | **REPORT AND RECOMMENDATION TO THE HON. LEWIS A. KAPLAN** |
| FLOWER AVE, INC., | |
| Defendant. | |

**BARBARA MOSES, United States Magistrate Judge.**

Invoking this Court's federal question jurisdiction, plaintiff Fizz Social Corp. (Fizz), which operates a social media platform for college students, brought this action against its competitor Flower Ave, Inc. (Flower), accusing Flower of unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125, trademark infringement in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and unfair competition, infringement, and tortious interference with prospective economic advantage in violation of New York common law. *See* Compl. (Dkt. 1) ¶¶ 1, 2, 36-78. Now before me for report and recommendation (*see* Dkt. 5) is defendant's February 6, 2024 motion (Dkt. 19) to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. In its brief in opposition to the motion, Fizz confirmed that it has withdrawn its § 32(1) claim, *see* Pl. Opp. Mem. (Dkt. 22) at 10 n.3, such that this Court's subject-matter jurisdiction depends on the viability of its remaining federal claim under § 43(a) of the Lanham Act.

For the reasons set forth below, I conclude that Fizz has failed to state a claim under § 43(a). I therefore recommend that defendant's motion be granted. The § 43(a) claim should be dismissed with prejudice pursuant to Rule 12(b)(6). Given the early stage of this case, there is no reason for this Court to retain jurisdiction over the remaining state law claims. Those claims should therefore be dismissed without prejudice.

## I. BACKGROUND

### A. Factual Background

Plaintiff Fizz, which is incorporated in Delaware and has its principal place of business in Palo Alto, California, operates a "private, campus-specific social media platform that facilitates authentic conversations through anonymity among students at their respective universities." Compl. ¶¶ 7, 11. As of the date of the Complaint, Fizz was "active at 160 colleges and universities," *id*. ¶ 8, and in "rapid expansion mode." *Id.* ¶ 10.

Defendant Flower, which is incorporated in Delaware and has its principal place of business in New York, operates a rival social media platform, created in 2022, called Sidechat. Compl. ¶¶ 9, 12. Like Fizz, Flower targets individual college campuses and provides anonymous space for student conversations. *Id.* ¶ 9. In 2023, Flower acquired an older social media platform, called Yik Yak, which already had "a large installed base of users." *Id.* ¶ 9.

Fizz launches its online platform one campus at a time, selecting schools "on an individual basis to orchestrate a launch event." Compl. ¶ 13. A successful launch requires "sufficient buzz" and "a big enough 'pop' at the launch to allow the network effects of the platform to take root." *Id*. To that end, Fizz hires and trains Lead Brand Ambassadors and Ambassadors to "drive engagement by students" at the selected institutions. *Id*. ¶ 15. Because Fizz is a "resource constrained" start-up, it strategically targets a specific group of schools (typically elite institutions) and attempts to launch on the first day of classes for the semester, when new student relationships are forming. *Id.* ¶ 14. Thus, "[t]he launch process on each campus takes time, effort, money, and good fortune." *Id*. ¶ 15. Fizz officers, employees, and users coordinate plans for each launch in private online chatrooms. *Id.* To use Fizz, students must download a mobile application (the Fizz App) to their phones and create an account. *Id.* ¶ 13.

Flower has used various aggressive tactics to compete with Fizz. Compl. ¶ 16. At Yale University in 2022, Flower allegedly paid students $5 to delete their Fizz Apps. *Id.* ¶ 34. In January 2023, when Fizz launched at Colgate University, Flower launched the same day and set up a competing station near Fizz's station. *Id.* ¶ 17. Flower's Ambassador shouted "Fizz ha[s] hackers" and spread false rumors about Fizz hacking students and compromising students' data. *Id.*

To avoid repeating the incident at Colgate, Fizz stopped publicly sharing its launch locations. Compl. ¶ 18. To learn where Fizz was launching, Flower began using "false pretenses." *Id*. ¶ 19. Its founder and CEO Sheldon Chang allegedly impersonated a Northwestern University student, infiltrated the Fizz chatroom for the Northwestern "Fizz community," and sent a message to Fizz's co-founder and COO Mark Solomon under the pseudonym "Mark Lee," asking about Fizz's launch locations and offering to help. *Id.* The ruse was successful, and Solomon unwittingly turned over confidential information, including a list of schools where Fizz was planning to launch. *Id.* ¶ 20. A week later, when Solomon revisited the message thread, Chang had changed his screen name from "Mark Lee" back to "Sheldon Chang." *Id.* ¶¶ 21-22.

In another incident (on an unspecified date), Flower used a Yik Yak Instagram account called @endi.yak to publish a single-image promotional campaign on Instagram (the Promotion), which displayed the stylized Yik Yak yak logo and disparaged Fizz by name, stating, "ALL MY HOMIES HATE FIZZ." Compl. ¶ 24. The promotion offered students a chance to win a $50 gift card, instructing them to "like this post," "tag a friend in the comments," and "make sure you're following us." *Id*. To increase their chance of winning, contestants were directed to send defendant a direct message (DM) with "proof you dont [sic] have Fizz." *Id*. Below that instruction, in the bottom right quadrant of the screen, was an image depicting what a user would see when visiting a smartphone app store to download the Fizz App, complete with the Fizz logo, which is a stylized

3

bumblebee (the Bee Design), and a button (circled in the Promotion) to "GET" the Fizz App, as shown here:



Compl. ¶ 24. In an app store, the "GET" button disappears once the smartphone user has downloaded that particular app. Thus, a screenshot showing the Bee Design with a "GET" button would prove that the user had *not* downloaded the Fizz App. Plaintiff alleges that it owns common law trademark rights in the Bee Design, which is "associated with the goods and services sold and operated by Fizz." *Id*. ¶ 25.

Finally, Fizz alleges that Flower spread misinformation about it, and attempted to have Fizz de-listed from Instagram in 2023 by inducing Flower's ambassadors to contact Instagram in

4

a coordinated manner to falsely report Fizz's activity as "spam." Compl. ¶ 27. As support for this allegation, plaintiff reproduces a series of August 11, 2023 texts from Adir Berkowitz, a full-time Flower employee, to Flower's ambassadors, beginning, "We have a vile competitor named Fizz," which is "trying to launch at our schools and take our beloved users." *Id*. ¶ 28. Berkowitz continued, "it's time to make Fizz Fizzle out." *Id*. ¶ 29. He explained that Flower "compiled a list of all the fizz launches we know of," *id.*, and told the ambassadors that, on the day of Fizz's launches, he would share the "IG handles" that Fizz was using (referring to the Instagram tags associated with Fizz's posts), after which "we will mark their accounts as harmful spam . . . and Instagram will disable their accounts." *Id*. ¶¶ 29-32. As a result of this scheme, on at least one occasion, Fizz was blocked from Instagram on its launch day at the University of California, Berkeley. *Id*. ¶ 33

### B. Procedural History

On February 6, 2024, after a pre-motion conference before the district judge, defendant Flower filed its pre-answer motion to dismiss the Complaint, supported by a memorandum of law (Def. Mem.) (Dkt. 20).[1] On March 6, 2024, plaintiff filed its opposition memorandum, and on March 20, 2024, defendant filed a reply brief. (Dkt. 23.) I heard oral argument on July 10, 2024. (Dkt. 28.)

## II. ANALYSIS

### A. Jurisdiction

This Court has original jurisdiction over plaintiff's federal claims, *see* 15 U.S.C. § 1125; 28 U.S.C. § 1331, and may have supplemental jurisdiction over its state law claims, which

---

[1] Defendant also filed the Declaration of Jason Koral (Dkt. 21), but it serves only to attach a copy of the Complaint, which is unnecessary.

according to plaintiff form part of the same case or controversy. *See* 28 U.S.C. § 1367.

### B. Legal Standards

#### 1. Rules 8(a) and 12(b)(6)

Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." If that "short and plain statement" fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 368 (S.D.N.Y. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. That is, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Conversely, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is appropriate. *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 570 (If the plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed.").

When faced with a Rule 12(b)(6) motion, the district court must accept as true all well-pleaded factual statements alleged in the complaint, *Iqbal*, 556 U.S. at 678, and "draw[] all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Weight Watchers*, 403 F. Supp. 3d at 368 ("In assessing the sufficiency

of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth.").

Generally, when a court dismisses a complaint for failure to state a claim, "the dismissal should be without prejudice to replead[ing]." *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *7 (S.D.N.Y. Aug. 1, 2012) (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42-43 (2d Cir. 1988)). However, the district court "has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy*, 482 F.3d at 200. Thus, a plaintiff seeking leave to replead must offer some basis for believing that a successful amendment would be possible. *See*, *e.g.*, *In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *20 (S.D.N.Y. Mar. 30, 2018) ("[D]istrict courts may deny leave to amend when plaintiffs request such leave in a cursory sentence on the last page of an opposition to a motion to dismiss, without any justification or an accompanying suggested amended pleading."), *aff'd*, 764 F. App'x 127 (2d Cir. 2019) (summary order).

### 2. Section 43(a) of the Lanham Act

Section 43(a)(1) of the Lanham Act prohibits a person from using "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin," in a manner that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person." 15 U.S.C. § 1125(a)(1). Because § 43(a) does not require that the plaintiff own a registered trademark, it functions as a "broad federal unfair competition provision which protects unregistered trademarks similar to the way that section 32(1) . . . protects registered marks." *Chambers v. Time Warner, Inc.*, 282 F.3d

7

147, 155 (2d Cir. 2002); *accord Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 749 (S.D.N.Y. 2021).

"Courts apply the same standard to assess claims for trademark infringement [under § 32(1)] and false designation of origin [under § 43(a)(1)] of the Lanham Act." *Down to Earth Organics, LLC v. Efron*, 2024 WL 1376532, at *3 (S.D.N.Y. Mar. 31, 2024). To survive a Rule 12(b)(6) motion to dismiss under either section, a plaintiff must plausibly allege that "[1] it has a valid mark entitled to protection and [2] that the defendant's use of it is likely to cause confusion[.]" *Id.*; *accord*, *Kid Car*, 518 F. Supp at 749.

As to the first prong, although only a registered mark is presumptively protectable, *see Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016), an unregistered mark may also be entitled to protection if it is "sufficiently 'distinctive' to distinguish the registrant's goods from those of others." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 381 (2d Cir. 2005). "Such distinctiveness may be demonstrated in either of two ways. The mark may be 'inherently distinctive' if its intrinsic nature serves to identify its particular source. Alternatively, even if not inherently distinctive, the mark may be distinctive by virtue of having acquired a 'secondary meaning' in the minds of consumers." *Id.*; a*ccord, Ctr. for Am. Dance, Inc. v. D'Addario*, 2024 WL 3570320, at *2 (S.D.N.Y. July 15, 2024); *Artisan Mfg. Corp. v. All Granite & Marble Corp*, 559 F. Supp. 2d 442, 449 (S.D.N.Y. 2008). "In the Second Circuit, courts analyze six factors to determine whether a mark has acquired secondary meaning[.]" *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe*, 131 F. Supp. 3d 196, 212 (S.D.N.Y. 2015) (citing *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 226 (2d Cir.2012)). Determining whether a mark has acquired "secondary meaning" is "a fact-intensive inquiry" and "generally should not . . . be resolved on a motion to dismiss." *Id.* at 212-13 (collecting cases).

As to the second prong, courts in the Second Circuit ordinarily rely on the eight factors laid out in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961), to assess the likelihood of consumer confusion:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Weight Watchers*, 403 F. Supp. 3d at 378 (quoting *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009)).

However, many of the *Polaroid* factors are a "bad fit" where the defendant claims that its use of the plaintiff's mark is "nominative fair use." *Weight Watchers*, 403 F. Supp. 3d at 378 (quoting *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Security University, LLC*, 823 F.3d 153, 168 (2d Cir. 2016)). "The doctrine of nominative fair use allows a defendant to use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of the defendant's product or the mark-holder's sponsorship or affiliation." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010) (quoting *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 413 (S.D.N.Y. 2006) (alterations and internal quotation marks omitted). "In other words, 'a defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the defendant.'" *Weight Watchers*, 403 F. Supp. 3d at 378 (quoting *Tiffany (NJ)*, 600 F.3d at 102-03). In "nominative fair use" cases, courts analyze three other factors when considering the second prong of the § 43(a) analysis:

> (1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark; (2) whether

9

the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and (3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services.

*Id.* at 378-79 (quoting *Int'l Info. Sys.,* 823 F.3d at 168).[2]

### C. Plaintiff Fails to State a Claim under § 43(a) of the Lanham Act

Plaintiff's remaining Lanham Act claim is premised on its assertion that Flower's unauthorized use of its Bee Design mark, in the Promotion, "is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Flower's services[.]" Compl. ¶ 67. As to the first prong of the § 43(a) test, plaintiff alleges that the Bee Design "has been used and continues to be used extensively in interstate commerce throughout the United States since at least as early as February 2021. The uses are associated with the goods and services sold and operated by Fizz[.] By this use the Bee Design has acquired distinctiveness, thereby establishing common law rights in the Bee Design associated with Fizz products and services." *Id.* ¶ 25. As to the second prong, Fizz alleges that the use of the Bee Design in the Promotion "is likely to cause consumers to believe, contrary to fact, that Flower's services are sold, authorized, endorsed, or sponsored by Fizz, or that Flower is in some way affiliated with or sponsored by Fizz." *Id.* ¶ 60. No further factual detail is provided as to the likelihood of consumer confusion.

Although plaintiff's allegations as to the distinctiveness of its unregistered mark are both brief and conclusory, defendant does not challenge the sufficiency of its pleading on this point.

---

[2] Despite its label, the nominative fair use doctrine is not an affirmative defense. *Int'l Info. Sys.*, 823 F.3d at 167-68. Rather, in cases where the defendant used "the mark at issue *as a mark* to specifically invoke the mark-holder's mark," rather than "to describe the alleged infringer's goods or services," *id.* at 167, the district courts must consider the additional factors set forth above when determining whether the *plaintiff* has demonstrated a likelihood of confusion. *Id.* at 168.

10

Consequently, I assume, for purposes of the pending motion, that Fizz has plausibly alleged that the Bee Design has acquired distinctiveness and therefore merits protection under the Lanham Act. Instead, Flower argues that Fizz has "manifestly fail[ed] to allege that Flower's Instagram ad [the Promotion] implied any false affiliation or endorsement by Fizz and it would be flatly implausible to suggest that it did." Def. Mem. at 9. Having carefully reviewed the Complaint (including the Promotion itself) in the light most favorable to Fizz, I conclude that Flower is correct, and therefore that Fizz has failed to plead a cognizable claim under § 43(a)(1).

Not only is the Complaint bereft of any factual allegations explaining *why* Flower's Instagram ad was likely to confuse consumers into believing that there was some affiliation or sponsorship between the competing social media platforms; the Promotion itself, as depicted in the Complaint, suggests no such thing. To the contrary, it clearly comes from Yik Yak, and just as clearly asks users of Yik Yak to show how much they "HATE FIZZ" by, among other things, sending "proof" that they "dont" have Fizz in the form of a screenshot showing that they have not downloaded the Fizz App. Compl. ¶ 24. As defendant correctly states, the screenshot – which includes a small image of the Bee Design – "provides instructions on how to send the DM confirming that the Fizz app is not installed," and thus "cannot plausibly be read as implying sponsorship by Fizz." Def. Mem. at 9.

In *Weight Watchers*, the court dismissed a § 43(a) claim pursuant to Rule 12(b)(6) on somewhat similar facts. Both parties offered weight loss services. The defendant, Noom, posted a series of social media ads that identified its competitor by name in a manner suggesting that Weight Watchers was passé or outmoded. *Weight Watchers*, 403 F. Supp. 3d at 367 ("[T]hese advertisements described Noom as offering effective, modern weight-loss services that compared favorably to those of Weight Watchers."). In one ad, Noom asserted that "millennials" were calling

11

Noom "Weight Watchers® 2.0." *Id*. at 368. In another, defendant stated, "Millennials are calling [Noom] Weight Watchers® for the 21st century." *Id*. at 368. After applying the *Polaroid* factors and the nominative fair use factors, the court dismissed Weight Watcher's § 43(a) claim, reasoning that no reasonable consumer could have been confused by Noom's advertisements because they "are expressly posted by Noom, a 'noom.' logo appears in each of the advertisements, and Weight Watchers is invoked once in the text, with a negative connotation that its services are outdated." *Id*. at 380.

Here, as in *Weight Watchers*, the accused advertisement was expressly sent from an account associated with the defendant, as demonstrated by the profile name "@endi.yak" and the prominent use of the stylized yak logo. Compl. ¶ 24. Moreover, while the negative comparison in *Weight Watchers* was fairly subtle – that is, Noom did not expressly disparage its older rival – in this case the defendant showed no such restraint. Rather, the Promotion proclaimed baldly that all of the yak's "HOMIES HATE FIZZ," and offered a chance to win a $50 gift card by, among other things, sending "proof you dont have Fizz." No reasonable college student could perceive the Promotion as somehow suggesting that Fizz was "the source of [Flower's] services, or that [Fizz] is affiliated with or endorses [Flower]." *Weight Watchers*, 403 F. Supp. 3d at 380. Although the "inherently implausibility of confusion," Def. Mem. at 10, is clear from a review of the Promotion itself, for the sake of completeness, I now consider each of the *Polaroid* and *International Information Systems* (nominative fair use) factors.

<u>Strength of the Trademark</u>. Plaintiff alleges that the Bee Design has been used in interstate commerce "since at least as early as February 2021[,]" Compl. ¶ 25, but acknowledges that it is a

"startup," *id.* ¶ 14, and that Fizz is "active" at only "160 colleges and universities." *Id*. ¶ 8.[3] Since plaintiff has failed to allege that its mark is strong, this factor weighs against it.

Similarity of the Marks. The Bee Design and the Yik Yak logo, which both appear in the Promotion, are dissimilar. "Standing alone, a reasonable consumer would not plausibly confuse the two." *Weight Watchers*, 403 F. Supp. 3d at 379. This factor also weighs against plaintiff.

Proximity of the Products. Fizz and Flower "are head-to-head competitors in the [social media platform] market." *Weight Watchers*, 403 F. Supp. 3d at 379. This factor favors plaintiff.

Likelihood of Bridging the Gap. Because the parties are already commercial competitors, this factor is inapplicable. *See Weight Watchers*, 403 F. Supp. 3d at 379.

Evidence of Actual Consumer Confusion. In its brief, Fizz asserts that it "has adequately met the pleading standard by alleging that consumers were indeed confused through the wrong and unauthorized use of the Bee Design[.]" Pl. Opp. Mem. at 11. However, no such allegation appears in its Complaint, which merely alleges, in conclusory terms, that confusion is likely. *See* Compl. ¶ 60, 67, 69. Plaintiff has never provided even a single example of actual consumer confusion. This factor therefore weighs against plaintiff.

Evidence of Bad Faith. Plaintiff alleges – again, in conclusory terms – that "Flower's conduct . . . is willful and is intended to and is likely to cause confusion, mistake, or deception[.]" Compl. ¶ 69. The Complaint does allege facts demonstrating that Flower used unfair tactics to compete against Fizz, including deception and dishonesty. *See id*. ¶¶ 17-22, 27-33. However, these allegations do not relate to the Promotion, and thus do not assist Fizz in showing that the Promotion

---

[3] According to U.S. News and World Report, there are at least 1,827 colleges and universities in the United States. *See* https://www.usnews.com/best-colleges/myfit (last visited August 5, 2024).

– which is the subject of its § 43(a) claim – was meant to confuse or deceive its audience. This factor is therefore neutral at best.

Respective Quality of the Products. The Complaint is silent as to the respective quality of the parties' social media platforms. This factor therefore weighs against plaintiff.

Consumer Sophistication. The Complaint does not expressly discuss the sophistication of the relevant consumers. However, Fizz does allege that its target customers are students from elite universities. Compl. ¶ 6-8, 14. As defendant correctly suggests, "[s]uch students are likely to be very experienced in the use of mobile social media apps[,]" Def. Memo. at 11, and thus, if anything, unlikely to be confused as to the source of an Instagram post. This factor is therefore somewhat negative for plaintiff.

Necessary Use. The Promotion offers a chance to win a $50 gift card, and suggests that the chances of winning are higher for participants who send proof that they do not have the Fizz App, in the form of a screenshot showing the Bee Design with the "GET" button. Compl. ¶ 24. Thus, the reproduction of the Bee Design in the Promotion was not gratuitous; it was used to show competitors "how the Fizz app appears on a user's phone" in an app store, Def. Mem. at 11, and thus what their screenshots should look like. This factor therefore weighs against plaintiff.

Extent of Use. According to the Complaint, defendant only reproduced the Bee Design once, in the Promotion – which was "liked" by a grand total of 136 users. Compl. ¶ 24. Other than using the Bee Design to show how the Fizz App appears on a user's phone, defendant made no other use of plaintiff's mark. This factor also weighs against plaintiff.

Affiliation or Endorsement. As discussed above, nothing about the Promotion suggests that defendant's product is sponsored by, endorsed by, or affiliated with Fizz. To the contrary: the Promotion explicitly and directly disparages Fizz and encourages its audience to show that they

"HATE FIZZ" as well – by, among other things, showing that they have not downloaded the Fizz App. Compl. ¶ 24. This factor therefore weighs heavily against plaintiff.

In short, only one of the *Polaroid* factors – the competitive proximity of the products – weighs in favor of the likelihood of consumer confusion as to the source of defendant's services. The remaining *Polaroid* and *International Information Systems* factors are neutral, inapplicable, or weigh against the inference that Fizz asks this Court to draw. I therefore conclude, again, that plaintiff has failed to allege a likelihood of consumer confusion and has therefore failed to state a claim under § 43(a) of the Lanham Act.

### D.     Leave to Amend

In its brief in opposition to the motion to dismiss, plaintiff requests that, if the Court finds its allegations inadequate, it "grant Fizz leave to amend its Complaint." Pl. Opp. Mem. at 17. However, Fizz does not suggest what more it could allege that would plausibly demonstrate the likelihood of consumer confusion arising from the Promotion. Similarly, when asked at oral argument what additional factual allegations it could provide on this point, plaintiff's counsel identified none, offering instead to elaborate on the reasonable inferences that could be drawn from the Promotion itself – that is, to continue to *argue* that the Promotion is likely to confuse consumers as to the source of the parties' respective services.

Since plaintiff requested leave to amend "in a cursory sentence on the last page of [its] opposition," *In re Ferrellgas Partners*, 2018 WL 2081859, at *20, and since it failed, both in that brief and at oral argument, to identify any facts it could allege to "cure prior deficiencies" in its § 43(a) claim, *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017) (citation omitted), there is no reason to grant leave to amend for this purpose.

### E.  Pendent State Law Claims

Plaintiff's state law claims are within this Court's supplemental jurisdiction only to the extent that they form "part of the same case or controversy" as its Lanham Act claims. *See* 28 U.S.C. § 1367(a). Supplemental jurisdiction may be declined where "the district court has dismissed all claims over which it has original jurisdiction." *Id*. § 1367(c)(3). Although the statute is phrased in discretionary terms, and there is no "mandatory rule to be applied inflexibly in all cases," *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), in the "usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id*.; *see also Kolari v. N.Y.-Presbyterian Hosp*., 455 F.3d 118, 123 (2d Cir. 2006) (reversing district court decision to retain supplemental jurisdiction over state law claims after dismissing federal claim, citing "the absence of a clearly articulated federal interest"); *Marcus v. AT&T Corp*., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

There is no discernable federal interest embedded in plaintiff's state-law claims for tortious interference with prospective economic advantage, common law trademark infringement, and common law unfair competition. Nor do any of the other *Cohill* factors militate in favor of this Court retaining jurisdiction over those claims. Consequently, there is "no reason to vary" from the usual rule in this case. *JTH Tax LLC v. AMC Networks Inc.*, 694 F. Supp. 3d 315, 341 (S.D.N.Y. 2023) (declining to retain jurisdiction over state law claims for trademark dilution and defamation after dismissing Lanham Act claims pursuant to Rule 12(b)(6)). In the absence of a viable claim

16

under the Lanham Act, the Court should decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

## III.   CONCLUSION

For the foregoing reasons, I respectfully recommend that defendant's motion to dismiss the Complaint be GRANTED; that plaintiff's remaining federal claim, brought under § 43(a) of the Lanham Act, be DISMISSED WITH PREJUDICE pursuant to Rule 12(b)(6); and that its state law claims be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3).

Dated: New York, New York
        August 5, 2024

_____
**BARBARA MOSES**
**United States Magistrate Judge**

### NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Lewis A. Kaplan at 500 Pearl St., New York, New York 10007, and to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Kaplan. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. See Thomas v. Arn, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x, 486, 487 (2d Cir. 2018); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).